UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARCUS NOY,

    Plaintiff,

    v.

WILLIAM HYATT, GEORGE PAYNE,
and JARED EAKRIGHT,

    Defendants.

CAUSE NO. 3:22-CV-824-RLM-MGG

OPINION AND ORDER

Marcus Noy, a prisoner without a lawyer, filed an amended complaint. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

The original complaint named as defendants Warden William Hyatte, Deputy Warden George Payne, and Pod Officer Jared Eakright. In it, Mr. Noy described in detail the events surrounding how he was injured coming to the defense of his cellmate who was attacked on April 22, 2021, while they were incarcerated at Miami Correctional Facility. As detailed in the court's prior screening order:

> Mr. Noy takes the allegations in his complaint largely from an incident report prepared by the Division of Investigation and Intelligence using

> surveillance video and interviews. That report shows that at 4:02 pm on April 22, 2021, another prisoner, a Mr. Hicks, turned and struck . . . another offender in the face. At 4:03 pm, Mr. Hicks ran towards another offender and began making stabbing motions towards him. Multiple offenders then came and began to kick and punch Mr. Hicks.
>
> Mr. Noy intervened to try to help Mr. Hicks. Mr. Noy alleges he was assaulted by several offenders in the process. The fight continued for the next two minutes until it dissipated on its own at 4:05 pm. But a minute later, at 4:06 pm, offenders began attacking Mr. Hicks and Mr. Noy again. The two were beaten by several offenders until a stinger grenade was deployed at 4:07 pm to end the fight.

ECF 11 at 2. The court determined that the complaint didn't state a claim because Mr. Noy didn't identify an individual defendant who was aware of a threat to him and could have taken steps to protect him. Nor was Officer Eakright's 5-minute response time to break up the fight unreasonable. *Id.* at 2-4. Mr. Noy couldn't hold Warden Hyatte or Deputy Warden Payne responsible based on a theory of pervasive violence at Miami because one instance of violence isn't enough to show a pattern of violence. *Id.* at 3.

In his amended complaint, Mr. Noy again sues now-former Warden Hyatte, now-former Deputy Warden Payne, and Officer Eakright. ECF 14 at 4-5. He sues Officer Eakright for not taking steps to protect him from harm and for not acting quickly enough to diffuse the fight that was occurring. He sues Warden Hyatte and Deputy Warden Payne based on an alleged atmosphere of anarchy and violence at Miami, which, combined with an ineffective protective custody system, contributed to the attack.

Mr. Noy provides background about how the atmosphere of violence at Miami developed and how it allegedly contributed to the violence he experienced. He alleges that Miami effectively doesn't offer protective custody for inmates in need of

2

protection from other inmates.[1] ECF 14 at 6. This became a problem as Miami transitioned from a Level 2 facility to a Level 4 facility, housing more dangerous inmates. With this change in inmate population, he alleges that fights became more violent, switching from one-on-one fights to attacks by multiple offenders at once. Gang activity increased, making it more dangerous for unaffiliated inmates.

Mr. Noy alleges the lack of an effective protective custody procedure led to unaffiliated inmates not requesting protection because they knew that any request for protection would be denied and might get them labeled as a snitch. Instead, an unaffiliated inmate would attack another unaffiliated inmate or prison staff to get sent to segregation, where they would be safe from threats. ECF 14 at 8-9. The increase in inmate attacks on staff led to staff being wary and distrustful of the inmates during Warden Hyatte's tenure, causing an "us versus them" mentality, further worsening the atmosphere at the prison.

Mr. Noy alleges that days before the attack, Mr. Hicks informed Pod Officer Eakright that he and his cellmate, Mr. Noy, were in serious and immediate danger from one of the organizations in the cellhouse. ECF 14 at 9. Officer Eakright's response allegedly was curt and dismissive, conveying to Mr. Hicks that he wasn't going to provide assistance to either of them. So Mr. Hicks initiated the attack a few

---

[1] Mr. Noy says Miami offers no protective custody. ECF 14 at 6. But the Indiana Department of Correction has a policy regarding protective custody that applies to all IDOC facilities. Ind. Dep't of Corr., Policy and Administrative Procedure No. 02-01-107, The Use and Operation of Protective Custody (eff. date Aug. 1, 2018), *available at* https://www.in.gov/idoc/files/02-01-107-Protective-Custody-8-1-2018.pdf (last visited Aug. 21, 2023) The court assumes, then, that Mr. Noy means that the Protective Custody Procedure at Miami isn't available in practice.

3

days later. Then, Mr. Noy continues, during the actual attack, he remembers looking up at Officer Eakright during the assault and being confused and enraged at the lack of any urgency in his unconcerned reaction.

Correctional officials have a constitutional duty under the Eighth Amendment to protect inmates from violence. Farmer v. Brennan, 511 U.S. 825, 844 (1994). But "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008). A failure to protect claim can't be predicated "merely on knowledge of general risks of violence in a detention facility." Brown v. Budz, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." Santiago v. Wells, 599 F.3d 749, 756 (7th Cir. 2010). "[N]egligence, or even gross negligence does not equate to deliberate indifference" and does not state a claim for a violation of the Eight Amendment. Johnson v. Dominguez, 5 F.4th 818, 825 (7th Cir. 2021).

The amended complaint's allegations don't allow a claim to proceed against Officer Eakright. The complaint isn't clear about what specific risk Mr. Noy faced from one of the "organizations" in the cell and whether Mr. Hicks communicated that risk to Officer Eakright on behalf of Mr. Noy. There are no allegations to support an inference that Officer Eakright acted unreasonably by not taking action.

4

The connection between the actual harm Mr. Noy experienced and the threat communicated to Officer Eakright isn't clear. Mr. Hicks was the aggressor and started the violence by assaulting another offender. Mr. Noy, then, chose to intervene. Although the denial of protection (rightly or wrongly) might have led Mr. Hicks to assault the other offender, these circumstances don't fall within the contours of a failure-to-protect claim.

Mr. Noy seeks to recover monetary damages from Warden Hyatte and Deputy Warden Payne based on the consequences of having an allegedly ineffective protective custody policy. Supervisors have the personal involvement necessary to be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Doe v. Purdue Univ., 928 F.3d 652, 664 (7th Cir. 2019). The amended complaint doesn't plausibly allege a claim against the Warden or Deputy Warden for two reasons. First, Mr. Noy must plausibly allege that these officials were aware that the protective custody policy wasn't working as intended but didn't take reasonable steps to remedy it. The amended complaint provides no indication that either defendant was actually aware of the ineffective protective custody policy. There is no suggestion they, themselves, process protective custody requests or that they were aware that their subordinates were systemically responding improperly to protective custody requests.[2] They can't be held liable for their subordinates' conduct just because they

---

[2] Mr. Noy relies on a 2020 article from Indiana Public Media about the growing problem of violence at Miami, ECF 14-1 at 5-8, and a list of other lawsuits out of Miami from other prisoner alleging a failure to protect, ECF 14-1 at 1-4. This information isn't relevant to whether Warden Hyatte or Deputy Warden Payne could be held responsible for the violence Mr. Noy experienced. The alleged increasing violence at Miami is a separate issue from whether the prison has an

supervise them. *See* Burks v. Raemisch, 555 F.3d 592, 594-596 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). Second, the complaint doesn't allow a reasonable inference that the harm Mr. Noy experienced can be traced to Miami's protective custody policy. If Mr. Hicks's request for protection was validly rejected, an ineffective protective custody system wouldn't be responsible for Mr. Hicks' later decision to assault another inmate.

The amended complaint doesn't state a claim for relief. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile," Abu-Shawish v. United States, 898 F.3d 726, 738 (7th Cir. 2018), but "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." Hukic v. Aurora Loan Servs., 588 F.3d 420, 432 (7th Cir. 2009). Mr. Noy's actions here may have saved Mr. Hicks' life, at considerable cost to himself. But in this unusual situation, the fault for his injuries can't be traced back to any of the defendants.

For these reasons, this case is DISMISSED under 28 U.S.C. § 1915A.

SO ORDERED on August 24, 2023

s/ Robert L. Miller, Jr.  
JUDGE  
UNITED STATES DISTRICT COURT

---

effective protective custody policy. *See also* Crone v. Ippel, No. 23-1387, 2023 WL 5276606, at *2 (7th Cir. Aug. 16, 2023) (unreported) ("The mere fact that many prisoners (often unsuccessfully) bring lawsuits against Wexford, for various unrelated problems, does not suggest that constitutional violations were happening with such frequency that it ignored an obvious risk of serious harm.") (quotation marks omitted)).